UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALBERT BROWN, JR.,

        Plaintiff,

v.                                Case No. 8:10-cv-2101-T-17TGW

SEC., DEPT. OF CORRECTIONS,
ALEX TAYLOR,
JEFFERY TROVILLION,
FRANCISCO TREPALACIOS,
STEVEN CLARK,

        Defendants.

_____

## O R D E R

This cause is before the court on Defendants McNeil, Trovillion, Trespalacios, Clark, and Taylor's motion to dismiss Plaintiff Brown's 42 U.S.C. § 1983 civil rights complaint. (Doc. 22). A review of the motion, Brown's response to the motion (Doc. 24) and applicable law, demonstrates that, for the following reasons, Defendants' motion to dismiss will be granted.

**PLAINTIFF'S ALLEGATIONS**

Brown alleges that Defendants have violated his constitutional rights by failing to provide him, a Nation of Islam follower, chapel services and religious videos separate and apart from the Islamic services currently provided by the institution. (Doc. 1, Section VII.) Brown claims that he is a devout member of the Nation of Islam (N.O.I.) religion and that N.O.I. is different from "conventional" Islam. Id. Brown states he has suffered mental stress for being forced to conform to the concept of Islam that is fundamentally different from his own. (Doc. 1, Section, VI.) He alleges that other religions are provided greater access to religious services and material. (Doc. 1, Section VII.) Brown seeks an "equal opportunity to practice his faith." (Doc. 1, Section VIII). Brown seeks injunctive relief in addition to compensatory and punitive damages from each Defendant. (Id.)

## STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89 (2007). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court expressly "retired" the "no set of facts" pleading standard under Rule 8(a)(2) that the Court had previously established in *Conley v. Gibson*, 355 U.S. 41, 47 (1957). *Twombly*, 550 U.S. at 563.

While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by

detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As a general proposition (and setting aside for the moment the special pleading requirements that attach to § 1983 claims subject to a qualified immunity defense), the rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Judicial inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly,* 550 U.S. at 555-56.

*Twombly* applies to § 1983 prisoner actions. *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008). As the Eleventh Circuit has explained, "[w]e understand *Twombly* as a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a)." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n. 43 (11th Cir. 2008).

The Supreme Court has since applied the *Twombly* plausibility standard to another civil action, *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009).  In evaluating the sufficiency of Iqbal's complaint in light of *Twombly's* construction of Rule 8, the Court explained the "working principles" underlying its decision in *Iqbal.* 129 S. Ct. at 1949.

First, the Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Second, restating the plausibility standard, the Court held that "where the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show [n]'-'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). The Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Id.* at 1951-52 (quoting *Twombly*, 550 U.S. at 567). Finally, the Court in *Iqbal* explicitly held that the *Twombly* plausibility standard applies to all civil actions because it is an interpretation of Rule 8. *Id.* at 1953.

## DISCUSSION

Brown's claims should be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) and (iii). Because Brown is proceeding in forma pauperis, his complaint is subject to the provisions of 28 U.S.C. §1915(e)(2), which provide:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-
>
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal--
>   (i) is frivolous or malicious;
>   (ii) fails to state a claim on which relief may be granted; or
>   (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915. Brown's complaint should be dismissed pursuant to provisions (ii) and (iii) of 28 U.S.C.1915(3)(2) the aforementioned statute.

**Provision (ii) – failure to state a claim on which relief may be granted.**

Brown's allegations, considered separately or collectively, and read in the light most favorable to Brown, are insufficient to state a claim on which relief may be granted. In determining whether a complaint should be dismissed pursuant to §1915(e)(2)(b)(ii), courts utilize the same guidelines as when proceeding under Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir.1997). The allegations are accepted as true and are construed in the light most favorable to Plaintiff. *Davis v. Monroe County Bd. of Educ.,* 120 F.3d 1390, 1393 (11th Cir.1997); *see also, Welch v. Lahey*, 57 F.3d 1004, 1008 (11th Cir.1995).

Brown has failed to allege specific constitutional violations. However, assuming Brown alleges that Defendants' actions violated Brown's First Amendment rights or the Equal Protection Clause of the Fourteenth Amendment, Brown has failed to state a cause of action on which relief may be granted.

### First Amendment Claim

To the extent Brown challenges the Defendants' actions pursuant to the Free Exercise Clause of the First Amendment, Brown has not demonstrated a violation. A prisoner is not entitled to an unfettered exercise of his religious belief; but rather, a "reasonable opportunity" to exercise and practice his religion. *Cruz v. Belo*, 405 U.S. 319, 322(1972). Additionally, "while inmates maintain a constitutional right to freely exercise their sincerely held religious beliefs, this right is subject to prison authorities' interests in maintaining safety and order." Jackson, at *2 (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345 (1987); *Turner v. Safley*, 482 U.S. 78 (1987); *Cruz*, 405 U.S. at 322). A prison regulation may impinge on an inmate's constitutional rights when the regulation is

reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89. To determine whether a prison policy is reasonable, a court must determine (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forth to justify the regulation; (2) whether, under the restriction imposed, a prisoner has alternative means for exercising the asserted constitutional right; (3) the impact that accommodating the asserted constitutional right will have on prison staff, inmates, and the allocation of prison resources; and (4) whether the regulation in question is an "exaggerated response" to prison concerns. *Id.* at 89-91.

However, prior to determining whether a policy is reasonable pursuant to *Turner*, an infringement must first be established. *Jackson*, at *3. That is, whether a policy substantially burdens the Plaintiff's ability to practice his religion or prevents him for "engaging in conduct or having a religious experience" mandated by his faith. *Id.* The Supreme Court has held that a substantial burden is one that "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707 (1981). Here, Brown does not allege that a worship group or ministry is essential to practicing his religion nor that watching religious videos is conduct mandated by his religion. (Doc. 1) He also does not state the failure to engage in these activities places a substantial burden on him to modify or violate his beliefs. (Id.) Further, while Brown claims that attending the "conventional" Islam services causes him mental stress, Brown attends these services by his own choosing. The Institution does not force or require prisoners to attend religious services. Brown is free to pray and perform his own individual religious exercises in a manner that does not violate the Department's rules and regulations. Based on the foregoing, Brown has not demonstrated that the

6

Department"s policy creates a substantial burden on Brown's ability to exercise his religion nor does it place pressure on him to modify or violate his religious beliefs.

However, assuming that the Institution's policy of providing religious services for a broad range of religious groups and not specific sects or subsets, does impinge on Brown's First Amendment rights, similar policies have survived *Turner* analysis against similar claims. *See Boxer v. Donald*, 169 Fed.App. 555, 2006 WL 463243 (11th Cir. 2006)(holding that the denial of inmate's request for Lost-Found Nation of Islam services did not violate his First Amendment rights); *Shabazz v. Barrow*, 2008 WL 647524,*1(M.D. Ga. 2008)(finding no First Amendment violation where a member of the Nation of Islam was denied a separate worship service); *Nation of Islam v. Michigan Dept. of Corrections*, 1995 WL 631589, 1 (6th Cir. 1995) (finding that the decision to deny the Nation of Islam prisoners' request for individual services and meetings was reasonable).

In *Al-Hakim v. Taylor, et al.*, 4:01cv187, the United States District Court for the Northern District of Florida reviewed the case of an inmate of the Florida Department of Corrections.  Among his contentions, Al-Hakim claimed that the Nation of Islam did not have an official scheduled place and time for worship services at Wakulla Correctional Institution. See Exhibit 1 to this Order at page 2 (Report and Recommendation of Magistrate William C. Sherrill). Despite Plaintiff's allegation that the Department had combined the Nation of Islam service with that of another Muslim group, the Magistrate wrote:

> Lack of available space and volunteers are limitations which make it reasonably necessary to combine services for groups of similar faiths. Various Islamic groups undoubtedly have distinctions and differences in their beliefs, but that does not mean that they cannot combine to worship. Indeed, the evidence shows that Christian religious groups combine to worship as

7

well.

See Exhibit 1 at page 17.

Accordingly, to the extent Brown claims the Defendants' actions were a violation of the First Amendment, he has failed to state a claim upon which relief may be granted.

## Equal Protection Claim

To the extent Brown raises an Equal Protection claim, he has not demonstrated a violation. The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish an equal protection claim, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and [that] (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir.2006); *see also Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n. 6 (11th Cir.2008) (noting that "the equal protection clause prohibits only intentional discrimination"). Here, the facts do not support either component of the test.

First, as Brown states, he practices a sect of Islam that is different from the "conventional" Islam. Thus, Brown must first allege that similarly situated prisoners, such as inmates that are Baptist or Methodist, have been provided separate chapel services outside of the Christian services already provided. *Cf. Boxer X*, at * 4. Brown makes no such statement. Brown only states that services are provided for "Protestants, Jewish, Catholic, and Hebrew Israelites adherents." (Doc. 1, Section VII). However, even assuming Brown has alleged that the Institution provides similarly situated prisoners with more favorable treatment, that allegation only goes to the first equal protection requirement. With

regard to the second requirement, the facts, viewed in the light most favorable to Brown, do not establish that the Defendants' decision to limit the number of chapel services provided by the Institution is a product of intentional discrimination.

Therefore, Brown has failed to allege and demonstrate an Equal Protection claim. *See Patel v. United States Bureau of Prisons*, 515 F.3d 807, 815-16 (8th Cir.2008) (concluding that prisoner's equal protection claim failed because he had not shown that the prison's decision to serve kosher entrees and not halal entrees was motivated by intentional or purposeful discrimination).

**Provision (ii) - seeks monetary relief against a defendant who is immune from such relief.**

**Eleventh Amendment Immunity**

To the extent Brown sues Defendants in their official capacities, Defendants are immune from suit in federal court pursuant to the Eleventh Amendment. The Eleventh Amendment provides immunity by restricting federal courts' judicial power:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.

The Eleventh Amendment protects a State from being sued in federal court without the State's consent. *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001). Eleventh Amendment immunity also bars suits brought against employees or officers sued in their official capacities for monetary damages because those actions actually seek recovery from state funds. *See Kentucky v. Graham*, 473 U.S. 159, 165-68

(1985); *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993). Eleventh Amendment immunity applies unless Congress validly abrogates that immunity or the state waives the immunity and consents to be sued. *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990). It is well established that Congress did not intend to abrogate a state's Eleventh Amendment immunity in § 1983 damage suits. *See Quern v. Jordan*, 440 U.S. 332, 340-45 (1979); *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490 (11th Cir. 1995). Additionally, Florida has not waived its sovereign immunity or consented to be sued in damage suits brought pursuant to § 1983. *See Gamble v. Florida Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1513 (11th Cir. 1986); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986); *Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990).

Brown brings this action in federal court pursuant to 42 U.S.C. §1983. Brown fails to allege or prove that Congress has abrogated the State of Florida's immunity from suits of this nature, or that the State of Florida has otherwise waived its immunity from suit. Moreover, states and state officials acting in their official capacities are not persons for the purposes of lawsuits brought pursuant to Title 42 U.S.C. §1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989). Thus, to the extent that Brown is suing Defendants in their official capacity, his complaint must be dismissed.

### Qualified Immunity

To the extent Brown sues Defendants in their individual capacities; they are entitled to qualified immunity. "Qualified immunity allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, and protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law."

*Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)(quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir 2001)). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir.2004) (quotations marks omitted). The defense of qualified immunity serves important public policies. *Ray v. Foltz*, 370 F.3d 1079, 1082 (11th Cir. 2004)(citing *Richardson v. McKnight*, 521 U.S. 399. 408-11(1997)). Qualified immunity protects "government"s ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates were not deterred by the threat of damage suits from entering public service." *Id.* (citing *Richardson* at 408). The doctrine provides immunity from suit, and is not just a defense to be raised at trial. *Id.*

To be entitled to qualified immunity, a defendant must first establish that he was acting within the scope of his discretionary authority. Mathews v. Crosby, 480 F.3d 1265, 1269 (11th Cir. 2007), cert. denied, --- U.S. ----, 128 S.Ct. 865 (2008). Here, it is apparent from the face of the complaint that Brown has sued Defendants for performing official duties within the scope of her discretionary authority as employees of the Florida Department of Corrections.

Once the defendant has established that he or she was acting within his or her discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* When evaluating a claim for qualified immunity, a court must determine (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right, and (2) whether, under the facts alleged,

11

there was a violation of "clearly established law." *See Pearson v. Callahan*, 555 U.S. ----, 129 S.Ct. 808, 820-21 (2009) (modifying *Saucier v. Katz*, 533 U.S. 194 (2001)). In applying either prong of the *Saucier* test, the facts alleged by Brown do not demonstrate that Defendants are not entitled to qualified immunity.

## First Amendment

To the extent Brown contends that the Defendants violated the Free Exercise Clause of the First Amendment by not providing a separate and individual service for Nation of Islam followers, Brown has not demonstrated that Defendants are not entitled to qualified immunity. Regarding the first prong of *Saucier*, Brown has not alleged or demonstrated that Defendants' actions constituted a violation of the First Amendment. In addressing the second prong, whether Defendants violated a clearly established constitutional right, there is no binding precedent that would have made it clear to Defendants that any of their actions violated Brown's constitutional rights. "In order to determine whether a right is clearly established, we look to the precedent of the Supreme Court of the United States, this Court's precedent, and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances." *See Oliver v. Fiorino*, 586 F.3d 898, 905, 907(11th Cir. 2009). If there is no precedent on point, a right is clearly established only if the law has "earlier been developed in such [a] concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Crawford v. Carroll*, 529 F.3d 961, 977-78 (11th Cir. 2008) "We have noted that, [i]f the law does not put the [official] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *See Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir.2002) (quoting *Saucier v. Katz*, 533 U.S.

194, 202 (2001)).

As demonstrated *supra,* there is no precedent or law mandating that prisoners belonging to specific sects or subsets of religious denominations receive separate religious services. On the contrary, case law from this circuit supports the opposite conclusion. See cases above and *Boxer v. Donald*, 169 Fed.App. 555 (11th Cir. 2006). Accordingly, to the extent Brown raises a First Amendment claim, Defendants are entitled to qualified immunity.

## Equal Protection

To the extent Brown contends that the Defendants violated the Equal Protection Clause of the Fourteenth Amendment, Brown has not demonstrated that Defendants are not entitled to qualified immunity. With regard to the first prong, when viewing the facts in the light most favorable to Brown, he established a constitutional violation, Brown has not demonstrated a constitutional violation. *See Oliver,* 586 F.3d at 905. Brown has not established that Defendants: (1) treated similarly situation prisoners more favorably; and [that] (2) their decision to limit the number of religious services was result of invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. As to the second prong, again, there is no precedent or law which would have placed Defendants on notice that their conduct would amount to a violation of the Equal Protection Clause. Thus, Defendants are entitled to qualified immunity for Equal Protection claims raised by Brown.

## Respondeat Superior is not cognizable in a Section 1983 action.

To the extent Brown attempts to hold Defendants liable for the actions of their subordinates, Brown is not entitled to relief. The doctrine of respondeat superior is not applicable to section 1983 actions. *See La Marca v. Turner*, 995 F. 2d 1526 (11th Cir. 1993) and *Williams v. Bennett*, 689 F.2d 1370 (11th Cir. 1982). Supervisory authority does not create liability for the acts of subordinates under section 1983, "without any evidence that the supervisory employee participated in or condoned the alleged deprivations." *Geter v. Wille*, 846 F. 2d 1352, 1355 (11th Cir. 1988). "The mere right to control, without any control or direction having been exercised and without any failure to supervise is not sufficient to support 42 U.S.C. 1983 liability." *Monell v. Department of Social Services*, 436 U.S. 658, 694 n. 58 (1979).

### Section 1997e(e) bars claims for compensatory and punitive damages for mental or emotional injury suffered while in custody where there is no showing of physical injury.

Pursuant to Section 1997e(e) Brown may not seek compensatory or punitive damages for mental or emotional injuries suffered while in custody where there is no showing of physical injury. In *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007), the Court held that the plaintiff prisoner who demonstrated no physical harm was not entitled to compensatory or punitive damages. Accordingly, claims for compensatory and punitive damages arising from alleged mental and emotional injuries must be dismissed.

### Brown has failed to state a cause of action the entitles him to injunctive relief.

Brown has not demonstrated that injunctive relief is warranted in this case. First, while Brown states he seeks injunctive relief, he does not specify the action(s) with which he seeks to have this Court direct the Defendants comply. (Doc.1, Section VIII) Second,

assuming Brown seeks an order directing the Department to provide Nation of Islam services and/or videos, Brown has not demonstrated the requisite criteria for injunctive relief. (Doc. 1) This Court has the discretion of whether to grant or deny a temporary restraining order or preliminary injunction. *Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd.,* 112 F.3d 1125, 1126 (11th Cir.1997) (citing *United States v. Lambert,* 695 F.2d 536, 539 (11th Cir.1983)); *Johnson v. Radford,* 449 F.2d 115 (5th Cir.1971). In exercising its discretion, the Court will consider whether: (1) there is a substantial likelihood that Brown will prevail on the merits; (2) there exists a substantial threat that Brown will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to Brown outweighs the threatened harm the injunction will do to the defendant; and (4) the granting of the preliminary injunction will not disturb the public interest. *CBS Broadcasting, Inc. v. Echostar Communications Corp.*, 265 F.3d 1193, 1200 (11th Cir. 2001); *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000); *Johnson v. United States Dep't of Agric.,* 734 F.2d 774 (11th Cir.1984); *Canal Auth. of State of Fla. v. Callaway,* 489 F.2d 567 (5th Cir.1974). " preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv. v. Bethesda Mem'l Hosp.,* 887 F.2d 1535, 1537 (11th Cir.1989) (quotations omitted). *See Baer v. McNeil*, 2010 WL 2306429 *1 (N.D. Fla. 2010)

Brown has not met the first criteria, specifically, a substantial likelihood that he will prevail on the merits. Brown has also failed to demonstrate that a substantial threat to an irreparable injury exists if the Institution does not provide a separate and individual service for Nation of Islam followers. As to the third factor, the issuing of such an injunction, would adversely affect Defendants and their discretion over operational and management matters

of the correctional institution. Last, Brown has not demonstrated that granting his request for injunctive relief will not disturb the public interest. As Brown has failed to meet his burden of persuasion as to each of the requisites required for an injunction, his request for injunctive relief must be denied.

Accordingly, the Court orders:

That Defendants' motion to dismiss the complaint (Doc. 22) is granted. Plaintiff's complaint is dismissed, without prejudice. The Clerk is directed to close this case.

ORDERED at Tampa, Florida, on February 25, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Albert Brown, Jr.